UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:  SETH CLARK SHECKARD and          :
        DENISE MICHELLE SHECKARD,        :        Case No. 05-22366REF
                    Debtors              :        Chapter 7


# MEMORANDUM OPINION SUPPORTING AND SUPPLEMENTING ORDER DATED JANUARY 17, 2008, WHICH GRANTED DEBTORS' MOTION TO AVOID THE LIEN OF UNIFUND'S DEFAULT JUDGMENT


## I. INTRODUCTION


Debtors, Seth Clark Sheckard and Denise Michelle Sheckard, filed their joint petition seeking relief under Chapter 7 of the Bankruptcy Code in April 2005. They received their discharge and their case was closed in September 2005. In October 2007, Debtor Mrs. Sheckard, closed the sale of their home, which had been titled in her name alone. At or near the time of the closing, the title agent informed Mrs. Sheckard that a judgment lien existed in favor of Unifund CCR Partners ("Unifund") and the parties closed the sale and created an escrow of $18,689.32 (the amount of the judgment) from the sale proceeds. Debtors moved to reopen this bankruptcy case and to avoid the lien resulting from the judgment. Over the objections of Unifund, I granted both motions. I ordered that this case be reopened and that the judgment lien be avoided in its entirety because (i) Unifund showed no prejudice from the delay, (ii) the sale of the property (with

1

the escrow of a portion of the sale proceeds) did not divest me of my power to avoid the

lien, and (iii) the lien impaired the homestead exemption and was therefore avoidable in

its entirety.   Unifund has filed its notice of appeal from my order avoiding the lien.  I

regard the appeal as relating, at least to some extent, to both my order reopening this case,

and my order avoiding the judgment lien.[1]  This Memorandum Opinion is written to

supplement and support my January 17, 2008 Order avoiding the lien[2] and constitutes my

findings of fact and conclusions of law.


## II.  PROCEDURAL BACKGROUND


Through its Praecipe dated February 21, 2005, Unifund sought judgment by

default against Mrs. Sheckard in the Lancaster County, Pennsylvania, Court of Common

Pleas, at docket number CI - 04 - 11725 (the "Lancaster County Litigation").  The face

---

[1]The notice of appeal, of course, is silent about specific issues being raised in the appeal.
I believe that no appeal would have been appropriate immediately following my November 27,
2007 Order, which granted Debtors' motion to reopen, because it was interlocutory.  Because it is
expressly limited to my January 17, 2008 Order, however, I regard this appeal as pertaining only
to the avoidance of the judgment lien.

[2]Local Rule 8001-1(b) provides: "(b) *Opinion in Support of Order*.  The bankruptcy judge
whose order is the subject of an appeal may, within 15 days of the filing of the notice of appeal,
file a written opinion in support of the order or a written supplemental opinion that amplifies any
earlier written opinion or recorded oral bench ruling or opinion."
L.B.R. 8001-1(b) (2005).
The SOURCE note for Local Rule 8001-1 explains: "This rule is derived from L.A.R. 3.1
of the Third Circuit's Local Rules.  Under subdivision (b) of this rule, a bankruptcy judge has the
same opportunity as a district judge to file an opinion after an appeal has been taken."

amount for which Unifund sought default judgment was $18,689.32 (the "Default Judgment").[3] Counsel for Unifund stated that Debtors had notice of the Default Judgment because they had referred to it in their bankruptcy papers filed with the Court.[4] This statement was and is incorrect. Moreover, Unifund said nothing about providing any notice of the Default Judgment whatsoever to Mrs. Sheckard or her counsel. Counsel for Debtors, on the other hand, specifically offered that his clients claimed that they had no notice of the Default Judgment.[5] He refuted Unifund's statement that Debtors referred to the Default Judgment in their bankruptcy documents and stated that Debtors did not know that the Lancaster County Case had gone to judgment when they filed this case.[6] About two months after entry of the Default Judgment, on April 25, 2005,[7] Debtors filed their joint petition seeking relief under Chapter 7 of the Bankruptcy Code. Both Debtors received their discharge on September 19, 2005, and their case was closed

---

[3]Both parties claimed that judgment by default had been entered in the Lancaster County Litigation, but neither of them provided me with anything memorializing the Default Judgment or the date on which it had been entered. During the November 27, 2007 hearing on the motion to reopen, counsel for Unifund mentioned that the date of the Default Judgment was February 24, 2005. For the purposes of this Memorandum Opinion, therefore, I will regard the Default Judgment as having been entered on February 24, 2005.

[4]Transcript of January 17, 2008 hearing ("Transcript") at p. 8, lines 10 - 11.

[5]Transcript at p. 5, line 5.

[6]Transcript at p. 13, lines 1 - 4.

[7]This two-month period might have been relevant if Debtors had sought avoidance of the lien of the Default Judgment as a preferential transfer under Section 547(b) of the Bankruptcy Code. 11 U.S.C. §547(b).

on that same date.

In their Schedule A - Real Property, Debtors identified their residence at 844 Houston Street, Columbia, Lancaster County, Pennsylvania (the "Property"), as being owned jointly by Debtors.[8]  Debtors valued the Property at $49,000 and noted that a single mortgage lien existed against the Property in the amount of $47,335.  In their Schedule C - Property Claimed as Exempt, Debtors claimed the value of the Property less the mortgage lien ($1,665) as exempt pursuant to Section 522(d)(1) of the Bankruptcy Code.  In their Schedule D - Creditors Holding Secured Claims, Debtors again list the first mortgage on their Property in the amount of $47,335.  In their Schedule F - Creditors Holding Unsecured Nonpriority Claims, Debtors listed two debts owed to Unifund Corp.: One in the amount of $4,012 (account 1065472874)[9] owed by Mr. Sheckard and the other in the amount of $6,763 (account 10654728749315) owed by Mrs. Sheckard.[10]

Debtors did not identify either of the Unifund Corp. claims as secured in

---

[8]As discussed above and below, Debtors' designation in Schedule A of their joint ownership of the Property was incorrect.  Mrs. Sheckard owned the Property in her name alone.

[9]The account numbers for the Unifund Corp. debts appear to be missing some digits.  The first account number has only 10 digits, rather than the usual 16 for credit card account numbers.  Similarly, the second account number has only 14 digits, rather than the usual 16 digits.  Also, the 10 digits for the account number of Mr. Sheckard's debt are repeated as the first 10 digits of the account number of Mrs. Sheckard's debt.  I mention these discrepancies because they are apparent from Schedule F, although they do not impact my determination of this case.

[10]Obviously, the amounts that Debtors thought they owed to Unifund contrasted significantly with the amount of the Default Judgment, which was against Mrs. Sheckard alone.  Also, the name of the creditor identified in Schedule F (Unifund Corp.) differs somewhat from the name used by Unifund herein.

their bankruptcy and no entity with Unifund in its name filed any claim in which it noted

a secured claim.  In Paragraph 4 of their Statement of Financial Affairs, Debtors disclosed

the Lancaster County Litigation of Unifund against Mrs. Sheckard and described it as

"Pending."  Nowhere in their bankruptcy documents do Debtors recognize that the

Default Judgment existed.

Although Debtors had identified the Property as being owned by them

jointly, the deed for the Property shows that Debtor, Mrs. Sheckard, was the sole owner of

the Property when it was acquired in October 1997.  And on October 30, 2007, Mrs.

Sheckard alone executed the deed that conveyed the Property to third party buyers for

$65,000.  Her October 2007 sale of the Property triggered the present dispute.  The title

agent responsible for closing the sale discovered the Default Judgment and would not

allow the sale to close without some way of eliminating the Default Judgment as a lien on

the Property.  The parties at closing,[11] including the title agent, agreed that the title agent

would hold in escrow $18,689.32 (the amount of the Default Judgment) from the sale

proceeds.  The sale of the Property then closed.  Although both counsel during the

hearing on the motion to reopen were uncertain whether the lien of the Default Judgment

encumbered the Property after the October 2007 sale,[12] they ultimately agreed that it does.

---

[11]I have no information about whether Unifund first became aware of the sale and the escrow of some of the proceeds either (I) at the time of the closing in October 2007 or (ii) upon the filing of Debtors' motion to reopen.

[12]Although Unifund requested transcription of the January 17, 2008 hearing on the motion to avoid the lien, it did not ask for transcription of the November 27, 2007 hearing on the

On November 2, 2007 (only three days after the closing of the sale of the

Property), Debtors filed their Motion To Reopen Bankruptcy Proceeding (the "Reopen

Motion") for the purpose of filing a later motion to avoid the lien of the Default Judgment

because it impaired their exemption in the Property.  Unifund opposed the Reopen

Motion and I held a hearing on November 27, 2007, during which I ruled from the bench

and granted the Reopen Motion.  I also memorialized my reopening of the case with a

written Order signed at the hearing.  On December 21, 2007, Debtors filed their Motion

To Avoid Judgment Lien of Unifund (the "Avoidance Motion"),[13] to which Unifund

responded on January 10, 2008.  I held the hearing on the Avoidance Motion on January

17, 2008, and took the matter under advisement.  Later that day, after further review of

the Avoidance Motion, Unifund's response, and the arguments made in Court, I issued

the Order granting the Avoidance Motion and avoiding the Default Judgment as a lien on

the Property that impaired Mrs. Sheckard's exemption.  Unifund filed its Notice of

---

motion to reopen the case.  The oral recording of that November 27, 2007 hearing shows that, as
counsel for Unifund was arguing that the Property was no longer property of the estate, I asked
whether the Property had been sold free and clear with the lien of the Default Judgment attaching
to the proceeds of sale that were held in escrow.  Counsel for Unifund said that she did not know
the answer and counsel for Debtors initially said that he also did not know.  Upon further
consideration, however, counsel for Debtors stated that the lien remained on the Property and the
escrowed proceeds from the sale were intended either to be paid to Unifund to satisfy the lien or
to be paid to Debtors upon the avoidance of the lien.  Oral recording of November 27, 2007
hearing at (approximately) 9:53:50 a.m.

[13]In its response to the Avoidance Motion, Unifund observed that my November 27, 2007
Order gave Debtors 20 days within which to file their motion to avoid the lien, but that the
Avoidance Motion was filed 24 days after the Order.  Unifund did not raise this issue at the
January 17, 2008 hearing and therefore waived it.  Moreover, Unifund pled no prejudice from the
four-day delay and I saw none.

Appeal on January 22, 2008. This Memorandum Opinion supplements and supports my

January 17, 2008 Order granting the Avoidance Motion and avoiding the lien of the

Default Judgment.

## III. DISCUSSION

Before discussing the legal issues relating to either motion, I will review

how the facts, generally undisputed as they are, were determined in this matter. At the

January 17, 2008 hearing, neither party had witnesses or exhibits. I questioned both

counsel, asking them specifically if they would stipulate that I could consider their

statements in their arguments as facts before me unless opposing counsel noted an

objection. Both counsel agreed.[14] I therefore regarded as established for my

consideration all of the statements of facts presented by either counsel in their arguments

at the hearing, requiring no further evidence. Moreover, I will also take judicial notice of

and consider the documents on the docket in this case.[15]

---

[14]Transcript at p. 8, line 20 through p. 9, line 25.

[15]A bankruptcy court may take judicial notice, under Fed. R. Evid. 201 (incorporated into
bankruptcy cases by Fed. R. Bankr. P. 9017), of the docket entries and the bankruptcy petition,
schedules, and statement of financial affairs filed in a case. See Maritime Elec. Co., Inc. v.
United Jersey Bank, 959 F.2d 1194, 1200 n. 3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146 at
*2 (N.D. Ill. 1993); In re Paolini, 1991 WL 284107 at *12 n. 19 (Bankr. E.D. Pa. 1991); see
generally In re Indian Palms Assoc., Ltd., 61 F.3d 197 (3d Cir. 1995). Although a court may not
take judicial notice sua sponte of the facts contained in the debtors' files that are in dispute, In re
Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not

Different counsel appeared on behalf of Unifund at the two hearings,[16] but they offered very similar arguments. Because I considered the statements of counsel at the two hearings in this case for both the Reopen Motion and the Avoidance Motion and because counsel presented similar arguments in both matters, I will discuss the motions together.

## A.  Issues Relating To The Reopen Motion And The Avoidance Motion

Unifund advanced four arguments.  First, Unifund believed that laches prevented me from reopening the case and avoiding the lien of the Default Judgment. The laches defense, according to Unifund and case law it cited, has three components: (1) Passage of two to two and one-half years (depending on the dates on which the calculation is based),[17] (2) Debtors' knowledge of the lien of the Default Judgment,[18] and

---

subject to reasonable dispute . . . [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., Ltd., 61 F.3d 197, 205 (3d Cir. 1995) (citing Fed. R. Evid. 201(f) advisory committee note (1972 proposed rules)).

[16]Danielle Boyle-Ebersole, Esquire, from the firm of Shapiro & Kreisman, LLC, appeared for and represented Unifund in the November 27, 2007 hearing.  The Tucker Arensberg, P.C., law firm prepared and filed both of Unifund's responses to the motions.  Christopher E. Fisher, Esquire, from Tucker Arensberg, was admitted pro hac vice (through the courtesy of Debtors' counsel, who moved his admission) and appeared for and represented Unifund at the January 17, 2008 hearing.

[17]Unifund and the cases it cites speak about two elements: Notice of the lien at issue and prejudice.  The cases and Unifund's argument also examine some passage of time.

[18]Generally, knowledge of the claim or lien is not an element essential to prove a laches defense.  But Unifund relied the description of laches described in Cantor v. Perelman, 414 F.3d 430, 439 (3d Cir. 2005), which I have also reviewed.    My consideration of this possibly extra

(3) prejudice to Unifund.  Second, Unifund argued that Mrs. Sheckard has no standing

and I do not have jurisdiction to consider the Avoidance Motion because Section

522(f)(1)(A) of the Bankruptcy Code[19] no longer applied upon the sale of the Property to

a third party.  Third, Unifund claimed that Debtors filed the Reopen Motion and the

Avoidance Motion in bad faith.  Fourth, Unifund argued that, assuming Debtors are

entitled to avoid the lien of the Default Judgment, the lien should only be avoided to the

extent of the exemption identified in Debtors' Schedule C, which was $1,665.  Because I

conclude that Unifund's arguments on each of these issues failed to carry the day, I

ordered that the case be reopened in November 2007 and entered my January 17, 2008

Order avoiding the lien of the Default Judgment.

## B.  Reopening A Case Is Within A Bankruptcy Court's Broad Discretion

Among the grounds for reopening a case is a debtor's desire to file a

motion to avoid a lien under Section 522(f).  See Collier on Bankruptcy ¶350.03[3] (15th

ed. rev. 2007).  I have broad discretion to reopen a case to accord relief to the debtor.  11

U.S.C. §350(b); Fed. R. Bankr. P. 5010.  The Third Circuit declared that "bankruptcy

---

element of the laches defense does not harm Unifund, because, as will be discussed in more
detail below, Unifund failed to satisfy any elements of the laches defense.

[19]11 U.S.C. §522(f)(1)(A).  Section 522(f)(1)(A) provides (in relevant part):
[T]he debtor may avoid the fixing of a lien on an interest of the debtor
in property to the extent that such lien impairs an exemption to which
the debtor would have been entitled under subsection (b) of this section,
if such lien is a judicial lien . . ..

courts have broad discretion to reopen cases after an estate has been administered."

Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak), 406 F.3d 214, 223 (3d Cir.

2005).[20]   See also AK Valley Fed'l Credit Union v. Liti, Civ. Action Nos. 06-1485, 06-

1486, 2007 WL 626117 at *2 (W.D. Pa. Feb. 23, 2007)(District Court affirmed the

bankruptcy court's decision to reopen the case and avoid a judgment lien when the delay

was a bit over two and one-half years and relied upon the "broad discretion" standard of

Zinchiak).  The District Court in  Zisholtz v. Goldstein (In re Martin's Aquarium, Inc.),

No. Civ. A. 00-4735, 2001 WL 74439 at *2 (E.D. Pa. Jan. 26, 2001), recognized the broad

discretion granted to bankruptcy judges to determine if a case should be reopened under

Section 350(b).  The Court determined that the standard for review of a bankruptcy court

decision to reopen a case is an abuse of discretion.  Martin's Aquarium, 2001 WL 74439,

at *2, citing Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997).  Despite that high

threshold for the review of the bankruptcy court's decision, the District Court in Martin's

Aquarium nonetheless reversed the bankruptcy court because it did not reopen the

bankruptcy adversary proceeding.[21]

---

[20]That the Court in Zinchiak faced a delay of only three months does not diminish its
clear statement of a bankruptcy court's broad discretion to reopen a case.

[21]The procedural twists and turns present in the Martin's Aquarium case were legion and
resulted in numerous court decisions and appeals.  The abuse of discretion standard, the
fundamental standard by which appellate courts review bankruptcy court decisions to reopen
cases, however, was never disturbed in any of the appeals.

10

## C.  Laches - Lengthy Time, Knowledge Of The Lien, And Prejudice

The components of the defense of laches are as follows:  First, some period

of time must have passed;[22] second, Debtors must have had knowledge of the Default

Judgment; and third, Unifund must show that it was prejudiced by the failure of Debtors

to seek to avoid the lien before the case was closed in September 2005.[23]  See Cantor, 414

F.3d at 439 (relied upon by Unifund and citing Delaware law).[24]

### 1.  Length Of Delay

The delay of slightly over two years from the closing of this case on

September 19, 2005 to the filing of the Reopen Motion on November 2, 2007,[25] is

certainly not so long that it leads to any presumption of undue length.  To the contrary, in

Albuquerque Chemical Company, Inc. v. Arneson Products, Inc., 201 F.3d 447, No. 98-

2336, 1999 WL 1079600 at *2 (10th Cir. 1999), the court determined that reopening a

case to avoid a judgment lien ten years after its closing was not too long.  See also AK

Valley, 2007 WL 626117 at *2 (delay of over two and one-half years was not too long).

---

[22]Unifund expressly refers to only the second and third elements of laches described here; the element of the passage of some period of time is assumed in its arguments.

[23]Response and Objection of Unifund CCR Partners to Debtors' Motion To Reopen Bankruptcy Proceeding ("Unifund Reopen Response"), pp. 4 - 5, ¶¶ 23 - 27; Response and Objection of Unifund CCR Partners to Debtors' Motion To Avoid Judgment Lien of Unifund ("Unifund Avoidance Response"), pp. 5 - 7, ¶¶ 24 - 30.

[24]See n. 18, supra.

[25]Alternatively, the delay might be considered to be two and one-half years if the calculation is made from the petition date in April 2005.

11

Within this District, Judge Fox has ruled that one and one-half years was not too long a time to prevent reopening a case to consider avoiding a judgment lien. In re Quackenbos, 71 B.R. 693, 695-96 (Bankr. E.D. Pa. 1987). In Quackenbos, Judge Fox identified five of the basic reasons offered in the decisions of courts that reopened cases to allow the avoidance of judicial liens:

> The courts adopting this view have articulated various reasons for their conclusion, including: (1) the absence of any deadline in the Code or the Bankruptcy Rules for initiating a lien avoidance proceeding under section 522(f), especially when contrasted with 11 U.S.C. §§ 546(a), 549(d); (2) the text of 11 U.S.C. § 350 which states that a case may be reopened to accord relief to the debtor; (3) legislative history which refers to reopening cases for lien avoidance subject to the bar of laches (citation omitted); (4) the fresh start policy of the Code which encourages the full application of the Code's exemption provisions; and (5) the interpretation of the right to avoid liens under section 522(f) as a "personal" right of the debtor which exists independent of case administration.

Quackenbos, 71 B.R. at 695.

Again within this District, Judge Frank has recently ruled that nearly three years was not too long a time to prevent reopening a case to pursue a claim. In re Padilla, 365 B.R. 492 (Bankr. E.D. Pa. 2007). I therefore conclude that the passage of two years (or two and one-half years), in and of itself, does not constitute a successful defense of laches.

12

## 2. Knowledge Of The Lien Of The Default Judgment

Unifund stated in both the Unifund Reopen Response[26] and the Unifund

Avoidance Response[27] and in oral statements of its counsel in the January 17, 2008

hearing,[28] that the Debtors knew about the Default Judgment. The sole support for

Unifund's argument is its claim that Debtors had included a reference to the Default

Judgment in their bankruptcy documents. But that contention is incorrect. Debtors'

Schedule F lists the claims of Unifund Corp. as unsecured. The assumption in that

comment (that Unifund Corp. is, in fact, Unifund) is not critical. The language of

Debtors' disclosure in Paragraph 4 of the Statement of Financial Affairs made clear to me

that Debtors regarded the Lancaster County Litigation as "pending" with no reference

whatsoever to the Default Judgment. Moreover, Debtors' statement that they did not

know about the Default Judgment[29] stands unopposed by Unifund. Unifund makes no

assertion that it provided actual or constructive notice of the Default Judgment to

Debtors. Upon the failure of this element, Unifund's defense of laches fails.

## 3. Prejudice To Unifund

Unifund argued that it was prejudiced by the delay of up to two and one-

---

[26]Unifund Reopen Response, p. 5, ¶24.

[27]Unifund Avoidance Response, p. 5, ¶27.

[28]Transcript at p. 8, lines 10 - 11.

[29]See discussion at p. 3, nn. 5 & 6, supra.

half years.  Its argument is based upon the holdings and conclusions of courts in prior

cases, but Unifund's counsel was not able to articulate any specific prejudice his client

has suffered.   Judge Fox, in the Quackenbos case, explained that delay, by itself, is not

enough to prove prejudice: "Rather, prejudice occurs only when there is a change in

position, during the period of delay, which will cause injury to the rights of the creditor or

third parties."  Quackenbos, 71 B.R. at 695.

A number of court cases reported by Unifund in its responses have

determined that, after some period of time, a creditor is prejudiced if it is forced to retain

an appraiser to go back in time to evaluate a property.  This general principle is espoused,

among other decisions cited by Unifund, in In re Montemurro, 66 B.R.124 (Bankr.

E.D.N.Y. 1984).  The Montemurro court considered appraisal to be an inexact science,

consisting of estimates and opinions.  66 B.R. at 125.  This is a proposition with which I

agree.   The court then declared that the accuracy of appraisals deteriorates when used to

determine the past value of property.  I disagree with this view as an absolute statement.  I

believe that the accuracy of appraisals could be enhanced by being able to look at real

estate markets after the valuation date as well as before the valuation date.

The court in Montemurro also stated that the dispute he faced was too close

and would rest on too fine a difference in valuation to allow an after-the-date appraisal.

This statement misses the mark, because any close dispute or fine difference existed the

entire time  – both before the case was closed and upon its reopening.  That is to say, if

the debtors in <u>Montemurro</u> had brought an avoidance action at the start of their case, that same close dispute and fine difference in valuation would have existed. But appraisers and the court would not have had the benefit of actually seeing which way, if any, the market was moving, in their valuation of the property.[30]

Although it recognized that some components of an appraisal might be made more difficult or even impossible, the Tenth Circuit Court determined that a delay of over ten years did not prevent appraisers from adequately evaluating property in an avoidance action. <u>Albuquerque Chemical</u>, 1999 WL 1079600 at *2. Based on the above, I find no prejudice from some possible difficulty in appraising the Property after the fact.

My finding of no prejudice is based upon the above discussion, although I have other grounds to declare that Unifund experienced no prejudice from being obliged to engage in a retrospective valuation of the Property. First, Unifund presented nothing from an appraiser to support its claim of prejudice. Counsel for Unifund frankly conceded that he did not know if his client had even spoken with an appraiser before declaring that it would be prejudiced by the difficulty in obtaining an appraisal.[31] Second,

---

[30]For example, if in April 2005 an appraiser showed comparable sales from January 2005 and February 2005 at $50,000, the appraiser must guess that the market might go up, stay even, or go down thereafter for a valuation as of April 2005. On the other hand, if the appraiser can add comparable sales from June 2005 and July 2005 at $70,000, the appraiser might reasonably opine that the value in April 2005 would have been somewhere in the middle. But this is hypothetical because Unifund elected not to present any appraisal evidence.

[31]Transcript at p. 12, lines 11 - 15.

15

counsel's statements that the Property might be in different condition today than in 2005

must fall because his statements were purely speculation. His comment was that the

Property "could have been certainly in a substantially different position."[32] He presented

no statement that the Property was different or what might be involved in determining if it

had or had not changed. Third, counsel claims that Unifund might have approached the

case differently and might have done things differently if the Avoidance Motion had been

brought before the case was initially closed.[33] But counsel failed to identify any such

additional defenses and I therefore disregard his statements along these lines.

Paraphrasing Judge Fox in Quackenbos, 71 B.R. at 696:

> In this case, there was no evidence introduced at trial of any
> actions taken by [Unifund] to enforce its lien or any change in
> position of any party since the case was closed. It follows
> that [Unifund] has not been prejudiced . . ..

> For these reasons as well as the failure to articulate any prejudice relating to

the retrospective evaluation of the Property, this element of Unifund's defense also fails.

---

[32]Transcript at p. 11, lines 3 - 8.

[33]Counsel for Unifund stated that Unifund might have had other defenses in the
avoidance action that it did not now have and that it might have been able to take other actions
upon the filing in 2005 of an avoidance motion. He also noted that Unifund might have launched
a drive to uncover additional assets. Transcript at p. 14, lines 13 - 19 and p. 15, lines 9 - 11.
Counsel offered nothing other than these generalities that refer to unknown procedural efforts
and strategies to do I know not what. Because counsel offered no supporting detail whatsoever, I
disregard these statements as wholly unsupported and meaningless. But even if Unifund had
described some specific intention to bring, for example, an action to contest the Debtors'
discharge, Unifund slept on its rights during the case and will not be heard to raise such collateral
issues at this time. Once again, I rely upon and adopt the extensive rationale of Judge Fox in this
regard in Quackenbos, 71 B.R. at 696-97, and I reject this defense.

16

I conclude that I must reject Unifund's defense of laches.

## D.  This Court's Jurisdiction To Hear This Matter And The Standing Of Debtor To Move To Avoid The Lien Pursuant To Section 522(f)(1)(A)

Section 522(f)(1)(A) permits the avoidance of a judicial "lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . ." 11 U.S.C. §522(f)(1)(A).  Unifund maintains that, because the Property was sold and the lien of its Default Judgment remains attached to the Property, Mrs. Sheckard no longer has any interest in the Property.  Therefore, Unifund argues, Section 522(f)(1) is not applicable and Mrs. Sheckard has no standing to press avoidance and I have no jurisdiction to hear it. Unifund relies on a handful of decisions as its support.  Among them is <u>Montemurro</u>, 66 B.R. at 125, in which the court examined the applicability of Section 522(f)(1) and determined that its literal language supported the lienholder's position.  The <u>Montemurro</u> court found this despite recognizing that the purpose of Section 522(f) was the "vague policy of furthering the debtor's 'fresh start.'" 66 B.R. at 125.

For three reasons, I do not accept the conclusion of <u>Montemurro</u>.  I believe that I have jurisdiction to hear and decide the Avoidance Motion and that Mrs. Sheckard had standing to present it.  First, I follow and rely upon the rationale of two other courts that recently held, quite directly, that a debtor need not have an ownership interest in liened property at the time the avoidance motion is filed.  These courts ruled that a debtor

17

need only have had some interest in the liened property at the time the lien attached. <u>See</u>
<u>Culver, LLC v. Chiu</u> (<u>In re Chiu</u>), 304 F.3d 905, 908 (9th Cir. 2002)(specifically
considering and rejecting many of the court decisions pressed by Unifund as supporting
its position); and <u>In re Orr</u>, 304 B.R. 875, 877 (Bankr. S.D. Il. 2004).

      Second, I agree in part with the <u>Montemurro</u> court, but only insofar as it
acknowledges that the overarching purpose of Section 522(f) is to further Mrs.
Sheckard's "fresh start." As Judge Fox noted in <u>Quackenbos</u>, 71 B.R. at 695, "the fresh
start policy of the Code . . . encourages the full application of the Code's exemption
provisions . . ..".

      Third, the encumbering effect of the lien has been, in effect, transferred to
the escrowed proceeds of the sale. Those funds, amounting to $18,689.32, will either be
paid to Unifund because of the lien of its Default Judgment or to Mrs. Sheckard in
furtherance of her "fresh start." Mrs. Sheckard clearly has an interest in those escrowed
proceeds, but they were not immediately paid to her because of the lien of Unifund's
Default Judgment. The proceeds of the sale of the Property would not be paid to Mrs.
Sheckard if her Avoidance Motion were not granted. In <u>Montemurro</u>, the court does not
mention the source of the $2,000 that the debtors posted as the escrow therein. I do not
know if the escrow fund in <u>Montemurro</u> was created from proceeds of the sale of the
debtors' liened property or from the debtors' other resources. Whether the escrowed
funds were or were not proceeds from the sale in <u>Montemurro</u>, however, I know that the

escrow in this case is from proceeds of the sale of the Property.  The purpose of the

exemptions in Section 522 is to allow debtors to retain certain limited assets to provide

them with the means to go on with their lives post-bankruptcy.  Avoidance of a judgment

lien on a debtor's home is paramount to that purpose and should be facilitated to the full

extent permitted by Section 522.

      The court in <u>Montemurro</u> notes that the debtors in that case showed no

extenuating circumstances or other justifiable excuse for their delay.  <u>Montemurro</u>, 66

B.R. at 125.  In direct contrast to <u>Montemurro</u>, Debtors have exhibited both extenuating

circumstances and a justifiable excuse for the delay.  The only evidence that I have[34] on

the issue of Debtors' knowledge of the Default Judgment lien shows that they had no

notice or knowledge of the entry of the Default Judgment and its resultant lien during

their bankruptcy and did not learn about it until they were in the process of selling the

Property.[35]  In this case, Mrs. Sheckard has chosen to sell the Property and the proceeds

from the sale should be paid to her to permit Debtors to continue with their "fresh start"

post-bankruptcy.  I conclude that Mrs. Sheckard had standing to bring the Avoidance

Motion and I have jurisdiction to hear and decide it.


## E.  Bad Faith Of Debtors In Filing The Reopen Motion And The Avoidance Motion

---

[34]<u>See</u> discussion at p. 7, nn. 14 & 15, <u>supra</u>, discussing the nature of my "evidence."

[35]<u>See</u> discussion at p. 3, nn. 5 & 6,<u>supra</u>.

Unifund claimed in the Unifund Avoidance Response and, to a lesser extent, in the arguments of its counsel that Debtors have engaged in bad faith in a number of circumstances in the Reopen Motion and the Avoidance Motion and in other bankruptcy documents. Specifically, Unifund listed five items that it contends establish Debtors' bad faith.

### 1. Debtors' Alleged Failure To Present The Value Of The Property

First, Unifund claimed that Debtors' presented no appraisal or evidence of value of the Property in April 2005.[36] This is incorrect. Whether it was wise litigation strategy or otherwise, counsel for Debtors relied upon and referred me to their valuation of the Property in their Schedule A at $49,000 as their sole proof of its value in April 2005.[37] Unifund, on the other hand, chose to come to the January 17, 2008 hearing with no evidence of the value of the Property. In In re Davis, 17 B.R. 547, 548 (Bankr. W.D. Mo. 1982), the court ruled that a debtor's opinion of value, rendered in his original Schedule A as an owner of property with knowledge of its condition and purchase price, is admissible in evidence under Federal Rules of Evidence 702 and is entitled to probative

---

[36]Unifund Avoidance Response, p. 7, ¶35.

[37]Counsel for Debtors stated in the January 17, 2008 hearing that (i) the Debtors had listed the Property value at $49,500 (this seems to have been a misstatement) and (ii) the Chapter 7 Trustee had accepted that amount. Transcript at p. 4, lines 23 - 25. My review of Debtors' Schedule A, however, reveals that their valuation of the Property in April 2005 was actually $49,000, which is the value that I will regard as Debtors' true position.

weight, particularly when it is uncontradicted.[38]  Accordingly, I have Debtors' valuation

of the Property at $49,000 and no attempt to refute that value by Unifund.  Unifund is

incorrect that Debtors failed to present the value of the Property.

### 2.  Debtors' Alleged Failure To Disclose That The Property Had Been Sold

Second, Unifund claimed that Debtors failed to disclose to me in either of

their motions that Mrs. Sheckard had sold the Property.[39]  Although it is true that neither

of Debtors' motions alleges that the Property was sold, the implication that Debtors were

somehow trying to hide this fact is, again, incorrect.  To the contrary, Debtors' counsel

disclosed immediately in the November 27, 2007 hearing on the Reopen Motion[40] and

again in the January 17, 2008 hearing on the Avoidance Motion[41] that the Property had

been sold and that a portion of the proceeds from the sale was being held in escrow.  For

Unifund to press this claim as bad faith in the Unifund Avoidance Response after the full

and clear disclosure by Debtors in the November 27, 2007 hearing is disingenuous.

### 3.  Loan Modification Agreement

Third, Unifund claims Debtors' bad faith is shown by their allegedly

---

[38]The Davis case is cited with approval in Judge Barry Russell's Bankruptcy Evidence
Manual, pp. 1283-84, §701.2 (West's Bankruptcy Series, 2007 - 2008 ed.).  Judge Russell
comments that although the court in Davis cited Rule 702, the property owner's testimony was
actually admissible under Rule 701.

[39]Unifund Avoidance Response, p. 7, ¶ 36.

[40]Oral recording of November 27, 2007 hearing at (approximately) 9:51:00 a.m.

[41]Transcript at p. 5, lines 6 - 9.

executing a loan modification agreement for their mortgage in 2003, but not recording it until after their discharge.[42] Unifund failed to explain or address this contention in any way at either the November 27, 2007 or the January 17, 2008 hearings. I am left with many questions, primarily — So what? In fact, I agree with Unifund's statement that it "is unaware of the prejudicial affect [sic] if any of the Loan Modification . . . ."[43] Because Unifund failed to show anything further about the loan modification, such as how it affected anything relevant, why the mortgage lender did not press to have it recorded when executed, what strategy of the Debtors led to this alleged deception, and how it prejudiced Unifund, the allegation died as an unsubstantiated and ineffective smear.

### 4. Debtors' Parents' Post-Bankruptcy Gift Of A New Home To Them

Fourth, Unifund informs me that Debtors received property at 45 South 8th Street, Columbia, Lancaster County, Pennsylvania, from Mr. Sheckard's mother for consideration of $1.00 before the opening of this case.[44] As with the loan modification, Unifund failed to explain how this gift to Debtors might be detrimental to anything or otherwise relevant to the Reopen Motion or the Avoidance Motion. Most importantly

---

[42]Unifund Avoidance Response, pp. 7 - 8, ¶¶ 37 - 38.

[43]Unifund Avoidance Response, p. 8, ¶ 38.

[44]Unifund Avoidance Response, p. 8, ¶ 39. I assume that Unifund means before the reopening of this case. If my assumption is incorrect, Unifund's allegation is that Debtors owned property in April 2005 that they failed to disclose on their Schedules. Debtors would have fared very poorly if this issue were pressed and successfully proved by Unifund. Unifund's decision not to press this claim led me to believe that the alleged undisclosed property was acquired some time after the initial closing of this bankruptcy case and before the October 2007 sale of the Property.

again, however, Unifund raised this issue in the Unifund Avoidance Response and then

failed to raise or explain it in court. Frankly, it appears to me that Mr. Sheckard's mother

was in a financial position to help her son and daughter-in-law by providing them with a

home when they were attempting to sell the Property and get out from under the burden of

its debt service. How this could have affected the Default Judgment lien escapes me.

### 5. Closing the Sale of the Property Before Presenting the Avoidance Motion

Unifund concludes its presentation of bad faith by noting that Debtors

gambled by first closing the sale of the Property, then filing their Reopen Motion and

their Avoidance Motion, and now asking this court to reward them.[45] To the contrary

once again, it is Unifund who gambled on not filing a secured claim or other pleading in

the bankruptcy to make certain (if it could) that its Default Judgment lien would be

recognized. Unifund apparently decided to sit back and wait until a later date to spring its

lien on Debtors and further gambled in this case by pressing only its legal issues without

presenting any evidence pertaining to the issue of the value of the Property in April 2005.

### 6. Unifund's Misrepresentations About Debtors' Knowledge Of The Default Judgment

I also reiterate, in this examination of bad faith, Unifund's recurring claims

that Debtors had specific and actual knowledge of the Default Judgment and its lien.

Unifund misrepresented that it is "undisputed" that the Default Judgment is included in

---

[45]Unifund Avoidance Response, p. 8, ¶ 40.

Debtors' Schedule F and Statement of Financial Affairs.[46]  As the discussion above

makes quite clear,[47] Debtors' Schedules and Statement of Financial Affairs show the

contrary - Debtors did not know about the Default Judgment, but regarded the Lancaster

County Litigation as simply "pending."  In neither of Unifund's responses nor in any

statements of its counsel did Unifund even suggest that Debtors had been served with the

Default Judgment or otherwise actually knew about it.


## F. Debtors Are Entitled To Receive Only $1,665 From The Escrowed Proceeds Of The Sale Of The Property

Unifund argues in the alternative that, if I determine that Mrs.

Sheckard is entitled to avoid the lien of the Default Judgment, she should be permitted to

avoid it solely to the extent of the $1,665 claimed as the exemption in Debtors' Schedule

C.  This argument is fundamentally flawed by Unifund's failure to understand the issues

involved in an avoidance motion.  Unifund neglected to take advantage of its opportunity

at the January 17, 2008 hearing to establish the value of the Property as of April 2005.

Avoidance of a lien is determined by the value of property, the amount of the liens that

encumber it, and the applicable exemption available to a debtor, all as of the filing date of

a bankruptcy.  Windfelder v. Rosen (In re Windfelder), 82 B.R. 367, 371-372 (Bankr.

---

[46]Unifund Avoidance Response, p. 5, ¶ 27.  Counsel for Unifund stated unequivocally in the January 17, 2008 hearing that Debtors knew about the Default Judgment because it "was filed in the pleadings originally."  Transcript at p. 8, lines 10 - 11.

[47]See discussion at p.3, nn.5 & 6, supra.

24

E.D. Pa. 1988); In re Chandler, 77 B.R. 513, 515-516 (Bankr. E.D. Pa. 1987).

As I explain below, Debtors need not have amended their Schedule C[48] because, even if I were to limit them to the $1,665 exemption originally claimed in Schedule C and use $1,665 when computing the arithmetic test outlined in Section 522(f)(2)(A), Unifund's judgment lien would have been avoided in its entirety.

The only offer to me of the value of the Property in this case was Debtors' reference to the value ascribed to the Property in their Schedule A − which was $49,000. As counsel for Debtors pointed out in the January 17, 2008 hearing, this value was, at least tacitly, accepted by the Chapter 7 Trustee, who did nothing to contest the value of the Property or the no-asset nature of this case.[49]  Similarly, the only evidence of the amount of the mortgage debt was in Debtors' Schedules A and D − the mortgage lien is disclosed in both schedules as being in the amount of $47,335.

Generally, upon the establishment of (i) the value of property at issue, (ii) the amount of the lien that is the subject of the lien avoidance motion, and (iii) the amount of all other non-avoidable liens that encumber such property, the statutory amount of the homestead exemption under Section 522(d)(1) comes into play.  Section 522(f)(2)(A) of

---

[48]I must also note that I should liberally grant leave to amend pleadings, specifically Schedule C.  See Albuquerque Chemical, 1999 WL 1079600 at *3; Frameli v. Reed Oil Co. (In re Frameli), 155 B.R. 354, 357-58 (Bankr. W.D. Pa. 1993).  Had it been necessary, therefore, I would have permitted Debtors to amend their Schedule C to take advantage of the full amount of the homestead exemption.

[49]See n. 37, supra.

25

the Bankruptcy Code prescribes that the amount of the lien to be avoided plus the amount

of all other non-avoidable liens are combined with the homestead exemption and the sum

is compared to the value of the property at issue.  11 U.S.C. §522(f)(2)(A).[50]  A judgment

lien impairs a debtor's exemption under Section 522(f)(2)(A) to the extent that (a) the

sum of (i) the judgment lien, (ii) all other non-avoidable liens on the property, and (iii) the

amount of the exemption that the debtor could claim if no liens encumbered the property

exceeds (b) the value of the property.  In this case, the sum of Unifund's lien ($18,689.32)

plus all other non-avoidable liens on the property (the mortgage: $47,335) plus the

amount of the exemption that Debtors <u>could</u> claim if no liens encumbered the Property

($18,450) exceeds the value of the property ($49,000) by $35,474.32, which is more than

the amount of Unifund's lien.  Unifund's lien is therefore avoided in its entirety.[51]

　　　　Regardless whether I use the amount of the exemption actually claimed by

---

[50]Section 522(f)(2)(A) provides:
　　　　For the purposes of this subsection, a lien shall be considered to impair
an exemption to the extent of  – (i) the lien: (ii) all other liens [that are not avoidable]
on the property; and (iii) the amount of the exemption that the debtor could claim if
there were no liens on the property; exceeds the value that the debtor's interest in the
property would have in the absence of any liens.

[51]The arithmetic test outlined in Section 522(f)(2)(A) contemplates the use of the amount
of the exemption that the debtor <u>could</u> claim rather than the amount of the exemption actually
claimed by the debtor in Schedule C.  Using the amount of the exemption that Debtors actually
claimed in Schedule C ($1,665) as the appropriate figure, however, would not change the result
in this case.  Unifund's lien would still be avoided in its entirety.  To explain, the sum of
Unifund's lien ($18,689.32) plus all other non-avoidable liens on the property (the mortgage:
$47,335) plus the amount of the exemption that Debtors claimed on their Schedule C ($1,665)
exceeds the value of the property ($49,000) by $18,689.32 (which is the full amount of Unifund's
lien).  Use of the exemption of $1,665, thereferr, also results in Unifund's lien being avoided in
its entirety.

Mrs. Sheckard in Debtors' Schedule C ($1,665) or the amount of the exemption that Mrs.

Sheckard could have claimed in the absence of all liens ($18,450) as the appropriate

figure,[52] the lien from Unifund's Default Judgment totally impaired Debtors' exemption

and is therefore avoided in its entirety pursuant to Sections 522(f)(1) & (2).

Alternatively, Unifund could have chosen to present an appraiser of the

value of the Property and might have been able to offer proof that its value as of April

2005 was substantially higher than Debtors' $49,000 value. If Unifund could have

established a sufficiently higher value,[53] Unifund's lien might not have been avoided at

least in part. Some effort by Unifund at proving a higher value might have resulted in a

decision that the lien might not have been avoided at all, because the lien would not have

impaired Debtor's exemption.

---

[52]See n. 51, supra.

[53]Mrs. Sheckard acquired the Property in October 1997 for $50,000. Property values in
Pennsylvania and much of the country escalated tremendously from 1997 through the middle
2000's, often doubling in value. Then, beginning in early 2006, property values began a decline
that continues today. It would be conceivable that the value of the Property could have fluctuated
from $50,000 in October 1997 to a significantly higher value in April 2005 to the $65,000 sale
price in October 2007. But this is pure speculation on my part because Unifund elected not to
present any evidence of the valuation of the Property to me.
    Unifund, at page 5, Paragraph 26, of the Unifund Reopen Response, hinted at this
possible fluctuation in the value of the Property, and implied that the $49,000 value in Debtors'
Schedule A was low. Curiously, Unifund did not reiterate this argument in the Unifund
Avoidance Response. Most important, Unifund chose not to present anything relating to the
value of the Property at either of the hearings.
    This hypothetical analysis, therefore, serves no basis for my decision in this case, but is
merely explanatory about the process of avoiding liens pursuant to Section 522(f).

Unifund, however, gambled[54] and decided not to attempt to establish the value of the Property but, rather, relied entirely on the legal arguments discussed above. Unifund's reliance on its legal arguments was misplaced. As with all of Unifund's previous legal arguments, I conclude that I must reject this final argument advanced by Unifund.

## IV.  CONCLUSION

Unifund's arguments in opposition to avoidance of the lien of its Default Judgment have failed. First, Unifund has not established any of the elements of laches: (i) Undue delay; (ii) knowledge of the lien of the Default Judgment; and (iii) prejudice to Unifund, so its laches defense must be rejected. Second, proceeds from the sale of the Property were retained in an escrow account and were payable either to Unifund as a result of the lien of its Default Judgment or to Mrs. Sheckard as the proceeds from the sale of her Property if her Avoidance Motion were successful. Section 522(f)(1)(A) therefore remained in full force and effect, creating both the standing of Mrs. Sheckard to advance her motions and my jurisdiction to hear the motions. Alternatively, combining both the language of Section 522(f)(1) and "fresh start," a fundamental purpose of the Bankruptcy Code, leads me to regard Section 522 (f)(1) as fully effective in this case,

---

[54] See text at p. 23, n. 45, supra.

28

despite the sale of the Property.  Third, I find no bad faith in Debtors, and I have serious

reservations about the propriety of numerous, wholly unfounded accusations advanced by

Unifund.  Fourth, because Unifund refused to make any attempt to establish the value of

the Property, the Debtors' valuation in their Schedule A stands unchallenged.  Applying

the arithmetic test of Section 522(f)(1)(A) in this case, I conclude that Unifund's lien

totally impairs Debtors' exemption.  This is so whether I use the amount of the exemption

that Debtors could have claimed if no liens were on the Property ($18,450) or the amount

of the exemption that Debtors actually claimed ($1,665).  As a result, Unified's lien must

have been avoided in its entirety  All arguments advanced by Unifund fall this case was

properly reopened,  and the Avoidance Motion should have been and was granted.  The

lien of Unifund's Default Judgment was properly avoided in its entirety

    This Memorandum Opinion constitutes my findings of fact and conclusions

of law and supplements and supports the January 17, 2008 Order granting the Avoidance

Motion and avoiding the lien of the Default Judgment.


**DATE:  February 6, 2008**                    BY THE COURT

                                               _____
                                               Richard E. Fehling,
                                               United States Bankruptcy Judge