IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re Seth Clark Sheckard,      :
Denise Michelle Schekard,       :
    Debtors.                :
                                :
UNIFUND C.C.R. PARTNERS,        :   CIVIL ACTION
                                :
    Appellant,              :
                                :
v.                              :
                                :
SETH CLARK SHECKARD             :   NO. 08-00820
DENISE MICHELLE SHECKARD        :
                                :
    Appellee.               :

FILED
SEP 19 2008
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

ORDER

AND NOW, this 19 day of September 2008, it is hereby ORDERED as follows:

1. The case is removed from the civil suspense docket.

2. The order of the Bankruptcy court dated January 17, 2008 is affirmed.

3. The clerk shall close this case.

BY THE COURT:

/s/ Michael M. Baylson
_____
Michael M. Baylson, U.S.D.J.

Date: _____

ENTERED
SEP 22 2008
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re Seth Clark Sheckard,
Denise Michelle Schekard,
    Debtors.

UNIFUND C.C.R. PARTNERS,     :    CIVIL ACTION

    Appellant,

v.

SETH CLARK SHECKARD     :    NO. 08-00820
DENISE MICHELLE SHECKARD

    Appellee.

**MEMORANDUM: RE APPEAL FROM BANKRUPTCY COURT ORDER**

*Baylson, J.*      *September 19, 2008*

Presently before this Court is an appeal from an order by the Bankruptcy Court of the Eastern District of Pennsylvania granting debtors' Motion to Avoid a lien against an interest in their property pursuant to 11 U.S.C. § 522(f)(1).

## I. Background

Mr. and Mrs. Sheckard (the "Appellees") jointly filed for Bankruptcy on April 25, 2005 under Chapter 7 of the Bankruptcy Code. The Appellees were discharged and their case was closed on September 19, 2005. In their filings, Appellees identified their residence in Lancaster County, Pennsylvania (the "Property") and valued it at $49,000. They also noted that a mortgage lien existed against the property for $47,335 and they claimed an exemption in the amount of $1,665 (the property value less the mortgage). Appellees identified two debts owed to Unifund

Corp., one for $4,012 and one for $6,763, that were "pending."

Two months before the bankruptcy filing, on February 21, 2005, Unifund (the "Appellant") filed a praecipe with the Lancaster county court seeking a default judgment on a credit card debt owed by appellees. A default judgment was entered in the amount of $18,689.32, apparently unbeknownst to appellees, and was subsequently entered as a lien against their property.

On October 30, 2007, Mrs. Sheckard, the sole owner of the Property, executed a deed conveying the Property to third party buyers for $65,000. At this point, the title agent discovered the lien entered after the entry of the default judgment. To proceed with the closing, appellees deposited $18,689.32 (the amount of the lien) from the proceeds of the sale into an escrow account, to be later distributed to either Appellees or Appellants. Appellees then sought to reopen the bankruptcy case to avoid the lien, under 11 U.S.C. § 522(f)(1), which provides:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section if such lien is-
> (A) a judicial lien

Judge Fehling of the Bankruptcy Court granted the Motion to Reopen on November 27, 2007 and the Motion to Avoid the Lien on January 17, 2008. Unifund appeals.

## II. The Bankruptcy Court's Opinion

In granting Appellee's Motion to Avoid, the Bankruptcy court noted that counsel had agreed to stipulate that their statements at the hearing would be considered as facts unless specifically objected to by opposing counsel. Furthermore, the court took judicial notice of the documents on the docket, specifically the bankruptcy petition, schedules and appellees' statement

of financial affairs. In re Sheckard, 386 B.R. 118, 124 (Bankr. E.D. Pa. 2008).

### A.   Laches

Turning first to Appellant's laches argument, the Bankruptcy court concluded that the doctrine did not prevent it from reopening the case and avoiding the lien. The laches defense generally requires (1) the passage of time and (2) prejudice against the party claiming the defense. The court noted the defense also possibly required a showing that the debtors' knew or should have known of the lien at issue. According to the court, the delay of slightly over two years from the time the bankruptcy case closed, to the filing of the Motion to Reopen, was not so long to be overly problematic. Furthermore, the Bankruptcy court was not convinced that the debtors were actually aware of the lien, as they had listed the matter with Unifund as "pending" on their filings and had stated that they did not know about the judgment. Unifund also had not directly asserted that it had provided actual or constructive notice of the lien. Finally, Unifund had not offered any specific arguments as to how it was prejudiced; the court was unwilling to assume that a retrospective appraisal of the property's value in 2005 would be impossible or inaccurate two years later, especially when it was unclear whether Appellant had contacted an appraiser to obtain such an estimate. Although Unifund also argued that it would have used a different strategy had the delay not occurred, it was unable to articulate exactly how it would have pursued the litigation differently. Thus, Unifund had failed to establish the elements of laches. In re Sheckard, 386 B.R. at 126-28.

### B.   Jurisdiction and Standing

Next, the court concluded that it did have jurisdiction to hear the matter and the debtor did possess standing to bring the claim under 11 U.S.C. § 522(f)(1). Appellant had argued that

the court no longer had jurisdiction, and the Appellees no longer possessed standing, because the property against which the lien was secured had been sold prior to the Appellees' Motions to Reopen and Avoid. The court concluded that an ownership interest in the liened property at the time the Motion to Avoid is filed is not necessary for the court to have jurisdiction under § 522(f); rather, a debtor need only have some interest in the liened property at the time the lien attached. Furthermore, the escrow account holding proceeds from the sale of the property allowed Appellees to retain a sufficient interest in the property to invoke jurisdiction. 386 B.R. at 129-30.

### C. Bad Faith

The court also rejected several arguments by Appellant that Appellee had acted in bad faith. First, the court rejected the notion that the Appellee had failed to present the value of the property in 2005, pointing out that Appellees had submitted the valuation of their property from their bankruptcy filings and Appellant had offered no alternative value. The court also outright rejected the claim that the Appellees had not disclosed the sale of the property as simply untrue given the record. The court then rejected Appellant's allegations that Appellees had shown bad faith in executing a loan modification agreement for their mortgage but not recording it until after their debt was discharged and in receiving property from Mr. Sheckard's mother because Appellant had not shown how these acts in any way prejudiced Unifund. Finally, the court did not accept Appellant's argument that Appellees showed bad faith in selling the property first and then filing their Motion to Reopen and Avoid. Appellees do not raise these bad faith issues on appeal, and this Court will therefore not address these arguments. In re Sheckard, 386 B.R. 130-32.

### D.  Amount of Avoidance

Lastly, the court held that Appellees were entitled to avoid the lien in its entirety, rather than the amount of the claimed exemption ($1,665) listed on their bankruptcy filings, as suggested by Appellant. Applying the arithmetic test of § 522(f)(2)(A), the court found that the judgment lien did impair the exemption to which the Appellees were entitled and thus should be avoided entirely under the wording of the statute. The outcome was the same whether the court used the claimed exemption or the higher amount of exemption to which the Appellees were actually eligible for. Appellants had failed to present the findings of an Appraiser that showed the value of the house in 2005 was higher than that which Appellees suggested, and therefore there was no contrary indication that the lien did not impair the exemption; thus the lien should be avoided in its entirety. In re Sheckard, 386 B.R. at 132-34.

## II.  Legal Standards

### A.  Jurisdiction

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. Appellants appeal a final order of the United States Bankruptcy Court for the Eastern District of Pennsylvania.

### B.  Standard of Review

In an appeal from a bankruptcy court decision, the district court sits as an appellate court. 11 U.S.C. § 158(a)(1). As a general matter, a district court reviews a bankruptcy court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse. In re Martin's Aquarium, Inc., 98 Fed. Appx. 911, 913 (3d Cir. 2004). A trial court's findings of fact are clearly erroneous when, after reviewing the record, the appellate court "is left

with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 105 S. Ct. 1504, 1511 (1985) (quoting United States v. U.S. Gypsum Co., 68 S. Ct. 525, 542 (1948)). Under this standard, "[i]t is the responsibility of an appellate court to accept the ultimate factual determinations of the fact-finder unless that determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility or (2) bears no rational relationship to the supportive evidentiary data." DiFederico v. Rolm Co., 201 F.3d 200, 208 (3d Cir. 2000) (citations omitted).

Specifically, questions on appeal as to whether a bankruptcy court had subject matter jurisdiction to hear a particular claim or a party had standing to bring the claim are reviewed de novo. In re RFE Industries, Inc., 283 F.3d 159, 163 (3d Cir. 2002). Furthermore, when dealing with issues of statutory interpretation decided by the bankruptcy court, the reviewing court exercises plenary review. Walters v. U.S. Nat'l Bank of Johnstown, 879 F.2d 95, 96 (3d Cir. 1989). A court's decision to take judicial notice of certain facts is reviewed for abuse of discretion. In re NAHC, Inc., 306 F.3d 1314, 1323 (3d Cir. 2002). The standard of review used for the laches issue has several components based on the element of laches under scrutiny. The court reviews factual findings, such as length of delay and prejudice, using the clearly erroneous standard. It reviews any balancing of equities for abuse of discretion, and it excises a plenary review over the trial court's application of legal precepts in determining if the delay was excusable. Bermuda Express, N.V. v. M/V Litsa, 872 F.2d 554, 557 (3d Cir. 1989).

IV.  **Analysis**

    A.  **Jurisdiction and Standing**

Appellant argues on appeal that the Bankruptcy court lacked jurisdiction to avoid the lien,

-6-

and Appellees lacked standing to bring the Motion, because 11 U.S.C. § 522(f)(1) only permits a debtor to "avoid the fixing of a lien on an interest of the debtor in property" and the Appellees, specifically Mrs. Sheckland, no longer owned the property against which the lien was secured at the time they sought to avoid the lien. The Bankruptcy court held that an ownership interest at the time avoidance is sought is not necessary and that ownership at the time the lien attached is sufficient for jurisdiction and standing under the statute. The court further reasoned that because some direct "interest" from the sale of the property remained in the escrow account and could not be accessed by Appellees until the matter concerning the lien was settled, the encumbering effect of the lien still existed, creating a sufficient interest in the property to invoke jurisdiction under the statute.

The meaning of the phrase "interest of the debtor in property" in 11 U.S.C. § 522(f)(1) has not yet been addressed by the Third Circuit or a district court within the Third Circuit. Several other courts interpreting the phrase have concluded that a debtor only need to have an interest in the property at the time the lien "fixed" and not when he moved to avoid. In re Chiu, 304 F.3d 905, 908 (9th Cir. 2002); see also In re Vincent, 260 B.R. 617, 621 (Bankr. D. Conn. 2000) and In re Orr, 304 B.R. 875, 877 (Bankr. S.D. Ill. 2004). In contrast, several other courts have held that the clear language of the statute requires the debtor to still possess an ownership interest in the property at the time of the motion to avoid. See In re Matter of Riddell, 96 B.R. 816, 817 (Bankr. S.D. Ohio 1989); In re Vitullo, 60 B.R. 822, 824 (Bankr. D.N.J. 1986); In re Carilli, 65 B.R. 280, 282-283 (Bankr. E.D.N.Y. 1986); In re Montemorro, 66 B.R. 124 (Bankr. D. Kan. 1984).

Thus, this court is presented with a question of statutory interpretation as to the meaning

of the phrase "interest of the debtor in property." "It is a cardinal rule of statutory interpretation that the starting point of any statutory analysis is the language of the statute." In re Schick, 418 F.3d 321, 327 (3d Cir. 2005) (internal citations omitted). If the language is ambiguous, a court can then resort to an examination of the legislative history. Velis v. Kardanis, 949 F.2d 78, 81 (3d Cir. 1991).

Importantly, our analysis of the phrase's plain meaning does not begin on an entirely clean slate. In Farrey v. Sanderfoot, the Supreme Court held that the words "avoid the fixing of a lien on an interest of a debtor in property" in § 522(f)(1) require that the debtor acquire his interest in the property before the lien fixes. 500 U.S. 291, 296 (1991). The Court emphasized that the words do not "possess anything other than their standard legal meaning." Id. In Farrey, a state court, in adjudicating a divorce, had granted the wife a marital award and the husband title to their real estate property. Id. at 293. As security for the award, the wife obtained a lien against the property of her husband during the divorce proceeding. Id. When the husband later filed for bankruptcy, he moved to avoid the lien under § 522(f)(1). Id. at 294. The Bankruptcy court avoided the lien, which was upheld by the district court and the Court of Appeals. Id. at 295. In the Court of Appeals, Judge Posner dissented, arguing that the debtor could not avoid the lien under the statute because he had no pre-existing interest in the property prior to the fixing of the lien on the property; rather, the debtor had acquired his interest in the property at the exact same time as the fixing of the lien on the property, as both had resulted from the same divorce decree. Id. at 295. Thus he could not satisfy § 522(f)(1), which Judge Posner reasoned required the debtor have a prior interest in the property upon which the lien could fix. Id.

Interpreting the language of that statute, the Supreme Court agreed with Judge Posner and

-8-

held that to "avoid" means to "annul" or "undo" and "fix" means to "fasten a liability upon." Id. at 296. Given the plain meaning of these words, the Court concluded that "fixing" in the statute refers to a temporal event that presupposes the existence of an interest in property upon which the lien can fasten. Id. Thus, to avoid a lien, the interest in the property to which the lien attached must have existed prior to the event of fixing. Id. The Court further concluded that this reading of the language comported with the statute's purpose, namely to provide relief for an overburdened debtor by protecting his exempt property from judicial liens. Id. at 297-98. According to the Court, "a principal reason Congress singled out judicial liens was because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts." Id. at 297. Furthermore, Congress was particularly concerned with a "rush to the courthouse," as evidenced in its elimination of any timing requirements that would have allowed avoidance only of liens fixed within a certain time of filing for bankruptcy. Id. at 298.

In determining whether the phrase "interest of the debtor in property" required the debtor retain that interest at the time avoidance was sought, In re Vincent relied on Farrey, explaining that the statute allows for the avoidance not of a lien itself but of a specific event, namely the fixing of a lien. 260 B.R. at 261. Thus the court should examine only whether the debtor possessed an interest in the property at the time of fixing, as required by Farrey, and not whether he retained the interest past that event. In re Vincent, 260 B.R. at 261. See also In re Chiu. 304 F.3d at 907. Similarly, the First Circuit in In re Wilding held that a lien itself need not still exist when the debtor moves to avoid. 475 F.3d 428, 432 (1st Cir. 2007). In that case, the debtor had already satisfied the lien before filing a motion to avoid, unlike the debtors in Vincent and Chiu,

-9-

who kept funds in an escrow account but did not satisfy their liens. Id. at 431-32. As long as the lien existed when the debtor petitioned for bankruptcy and was attached to an interest of the debtor at that time, the debtor could move to avoid under § 522(f)(1). Id. The First Circuit further noted that the statute requires a court to determine impairment of the exemption by measuring the fair market value of the debtor's interest in property at the time of filing for bankruptcy. Requiring a court to measure the value of the lien at the time of the motion to avoid in the same calculation of impairment would be utterly inconsistent. Id. at 433. Moreover, allowing avoidance of the lien furthered the "fresh start" policy of the Code by allowing full and unencumbered application of the beneficial exemption provisions. Id.

The courts in the cases discussed above employ sound judicial reasoning and established methods of statutory interpretation to conclude that both the interest in property and the existence of the lien are required only as of the time of filing of the petition, rather than the time of the motion to avoid. This Court agrees. First, according to the plain language of the statute, § 522(f)(1) clearly allows a debtor to avoid, or undo, a specific act— the fixing of a lien on a debtor's property interest. Thus, as the Supreme Court held, the language of the statute instructs the court to look at the time of fixing, not the time of the motion, to determine the debtor's property interest. While the act of fixing clearly presupposes an existing interest in property upon which the lien can attach, see Farrey, there is no such implicit requirement in the act of avoiding. As the Court in Farrey noted, "avoid" simply means to "annul" or "undue," and thus according to the language of the statute, all that is required for § 522(f)(1) to apply is the prior occurrence of a single event— the fixing of a lien on an interest of the debtor— by the time of the motion. 500 U.S. at 296. Therefore, the plain language of § 522(f)(1) does not require the

debtors retain an interest in the property when they file their Motion to Avoid the lien.

While the language is thus fairly clear that an interest in property is only necessary at the time of petitioning and not at the time of the Motion to Avoid, it is worth noting that this reading of the statute also supports the Code's underlying fresh start policy by allowing debtors to discard a lien that undermines the functioning of an exemption designed to help the debtor overcome bankruptcy. Under the formula outlined in § 522(f)(2)(A), the lien will impair the exemption, whether the debtors retain the interest in the property or not, because the statute refers back to the value of the interest in the property <u>at the time of petitioning</u> to determine impairment. Thus allowing the lien to persist impairs the exemption, contrary to the statute's clear intent to give the debtors a fresh start. Judge Fox noted in <u>In re Quackenbos</u>, one reason a majority of courts have allowed debtors to avoid a lien after entry of a discharge order, and have even allowed debtors to reopen a closed case to avoid a lien, is because the fresh start policy of the code "encourages the full application of the Code's exemption provisions." 71 B.R. 693, 695 (Bankr. E.D. Pa. 1987). Given that the court makes such allowances even after extended periods of time have passed in order to promote that policy and give full effect to the exemption provisions, it follows that the court would similarly still allow a debtor to avoid a lien after the property is sold, or, as in the case of <u>In re Wilding</u>, after the lien is satisfied; the statute's goals, and the court's desire to further them, are not suddenly lost merely because the property is no longer in the debtor's possession, as long as the exemption is impaired under the statute and the court can still give effect to the statute and its policy.

Moreover, it would be inconsistent with the fresh start purpose to require debtors to always file a Motion to Avoid before they sell their property or otherwise risk losing their

statutory right to avoid the lien. If an opportunity to sell presents itself quickly, before a debtor can avoid the lien, the statute does not indicate that such unlucky timing should impede the debtors' fresh start. In fact, the statute desired to eliminate the harsh effects of timing on a debtors fresh start by removing the incentives for a race to the courthouse between debtors and creditors. Therefore, interpreting the phrase "interest of the debtor in property" to require only an interest at the time of filing for bankruptcy, rather than at the time of the Motion to Avoid, is consistent with the purposes underlying the Bankruptcy Code. Based on the purposes of the underlying statute and fair reading of the statute's language, as previously interpreted by the Supreme Court in Farrey, this court finds that a debtor does not need to have a contemporaneous interest in the liened property when filing a motion to avoid under § 522(f)(1). Thus, the bankruptcy court did have jurisdiction to hear and Appellees did possess standing to bring the Motion to Avoid. We now turn to Appellants additional arguments on appeal.

**B.    Judicial Notice**

Appellant next argues that the Bankruptcy court improperly took judicial notice *sua sponte* of the documents on the docket, including the Appellee's bankruptcy filings, which it then used in determining the value of the property in question. The court noted that it could take judicial notice of facts not in reasonable dispute "so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., Ltd., 61 F.3d 197, 205 (3d Cir. 1995). Other courts have taken judicial notice of documents on the docket. See, e.g., Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir.1 991); In re Paolini, 191 WL 284107 at *12 n.19 (Bankr. E.D. Pa. 1991). Appellants essentially argue that because the value of the property was in dispute and because tax

-12-

assessments, which were apparently used by Appellants in calculating the value of their property listed on the bankruptcy filings, are unreliable, the court should not have taken judicial notice of the filings.

The decision to take judicial notice is discretionary, and therefore should only be reversed on appeal for abuse of that discretion. In re NAHC, Inc., 306 F.3d 1314, 1323 (3d Cir. 2002); Fed. R. Evid. 201 (judicial notice is discretionary when not requested by either party) (incorporated into bankruptcy law under Fed. R. Bankr. P. 9017). In In re Augenbaugh, the Court explained that while papers on file in bankruptcy proceedings may be relevant and admissible, the referee of a hearing was not entitled to take judicial notice of the documents when the facts to which they related were clearly being disputed. 125 F.2d 887, 890 (3d Cir. 1942).

In the present case, the Appellees were the only party that offered any estimate as to the value of the property in question. While Appellant suggests that Appellees completely failed to provide any evidence on this matter, that contention is simply untrue. Appellees provided the value of their property listed on their earlier bankruptcy filings as the current value of the property. Rather, Appellant is actually unsatisfied with the particular value offered and the documents used (the old tax assessments) in producing that value. Still, though counsel for the Appellant questioned the accuracy of the value at the hearing, Appellant offered no alternative value for the property and did not appear to make any effort to produce such a value. Counsel for Appellants did not know of any efforts by his client to obtain the services of an Appraiser or otherwise determine the value of the property to use in challenging Appellee's proffered value. (Hr'g Tr. Pg. 12).

Furthermore, counsel specifically agreed that their statements at the hearing would be

-13-

considered as fact unless opposing counsel noted an objection. (Hr'g Tr. Pg. 8). While counsel for Appellant observed that Appellees had failed to provide any additional values of the property since the earlier filing, he did not specifically object to the amount or provide an alternative. Admittedly, the record is not particularly strong regarding the value of the property. However, given all the above circumstances, the judge did not abuse his discretion in concluding that the documents were not the subject of a true dispute and that there was sufficient agreement to justify his taking judicial notice of their content.

### C.    Laches

Appellants also contend that the Bankruptcy court erred in holding that the doctrine of laches did not bar the Appellees from bringing their claim. Notably, because 11 U.S.C. § 522(f)(1) does not have a statutory time limit, In re Quackenbos, 71 B.R. at 695, the doctrine of laches operates as a defense and the party asserting the defense has the burden of proof. See In re Ko-Ed Tavern, 129 F.2d 806, 806 (3d Cir. 1942); EEOC v. Great Atlantic & Pacific Tea Co., 735 F.2d 69, 80 (3d Cir. 1984). Thus, contrary to Appellant's argument, the Bankruptcy court did not improperly place the burden of proving laches on the Appellants.

The essential element of laches is prejudice; the party asserting the defense must show that it has suffered some significant injury from the delay in the claim being brought.[1] In re Ko-Ed Tavern, 129 F.2d at 806. The Bankruptcy court correctly noted that the delay itself is not

---

[1] The court below and the Appellants discuss a potential element of laches requiring proof of the debtor's knowledge of the lien, based on a Third Circuit case applying Delaware law, Cantor v. Perelman, 414 F.3d 430 (3d Cir. 2005). The present case concerns parties and property from Pennsylvania, and there is no case law from Pennsylvania suggesting that the debtor's knowledge is a necessary element of the laches defense. Even if knowledge is a required element and even if Appellants can establish that Appellees should have known of the lien, the issue is not dispositive as Appellants fail on the prejudice element.

sufficient to bar hearing the claim or to support a finding of prejudice; rather there must be "a change in position, during the period of delay, which will cause injury to the rights of the creditor or third parties." In re Quackenbos, 71 B.R. at 695. Importantly, the lower court's finding of prejudice is a finding of fact that is reviewed under the clearly erroneous standard. Bermuda Express, N.V. v. M/V Litsa, 872 F.2d 554, 557 (3d Cir. 1989).

The bankruptcy court found that the Appellant was not in fact prejudiced by the length of delay. Appellant made only hypothetical objections and conclusory allegations as to prejudice and had failed to prove any specific injury from the delay. Although Appellant argued that it would have changed its strategy, it could not articulate any specific arguments or approaches it would have made differently. Appellant also complained that it was more difficult to obtain an accurate appraisal of the property over two years later but did not provide any basis for this objection, nor had it apparently made an effort to obtain any appraisal to verify the alleged difficulty. Appellant's counsel continuously argued about what "may" have happened had the case been brought earlier, but did not have any facts to support his assertions or satisfy his burden of proof. (Hr'g Tr. Pg. 14).

Appellant cites several cases from other jurisdictions standing for the proposition that the passage of time combined with the difficulty and expense of retrospectively valuing property several years later constitutes prejudice. See In re Tarkington, 301 B.R. 502, 507 (Bankr. D. Tenn. 2003); In re Levy, 256 B.R. 563, 566 (Bankr. D.N.J. 2000); In re Montemurro, 66 B.R. 124, 125 (Bankr. D. Kan. 1984). However, the Bankruptcy court noted in contrast that other courts have actually found little difficulty with valuing property after passages of time as long as ten years. See Alburquerque Chemical Co., Inc. v. Arneson Products Inc., 1999 WL 1079600 at

-15-

*2 (10th Cir. 1999). Thus, the court was unwilling to accept the appellant's argument of a hypothetical difficulty with valuing the property a short two years later as sufficient evidence of prejudice.

No case in this jurisdiction suggests that the mere passage of slightly over two years conclusively establishes prejudice because of a difficulty in valuing property. In light of the existing case law and given Appellant's conclusory assertions of prejudice, this Court cannot conclude that the Bankruptcy court's finding that the Appellant was not prejudiced was clearly erroneous. Thus, because the Appellant failed to prove an element of the laches defense, the court below properly denied relief on that ground.

### D.   Amount of Lien Avoidable

The Appellant lastly argues that, if the Court holds 11 U.S.C. § 522(f)(1) does apply, the lien should only be avoided in the amount of $1665, the amount claimed by the Appellees as an exemption in their bankruptcy petition. Under 11 U.S.C. § 522(f)(1), a court may avoid a lien if it impairs an exemption to which the debtor would have been entitled. 11 U.S.C. § 522(f)(2)(A) sets forth an arithmetic test for determining whether a lien impairs an exemption:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of –
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property exceeds the value that the debtor's interest in the property would have in the absence of any liens.

A debtor's interest in the property is determined by the "fair market value as of the date of the filing of the petition." 11 U.S.C. § 522(a)(2).

As an initial matter, Appellant questions the value of the debtor's interest in the property

used by the Bankruptcy court in performing the calculation under § 522(f)(1). The lower court chose to use Appellee's estimated value of the property listed in their bankruptcy filings. Appellants argue that this was incorrect as the fair market value of the property is generally measured by "the amount the debtor would receive from a reasonable and willing buyer if the debtor were not under compulsion to sell." In re Winderfelder, 82 B.R. 367, 372 (Bankr. E.D. Pa. 1988).

The Bankruptcy court's findings of fact regarding the value of the property to be used in the formula are not clearly erroneous. The court specifically noted that Appellants failed to present any alternative values of the property and that counsel for Appellant did not know if his client had sought the services of an appraiser to do so. Although the court was sympathetic to the Appellants, noting that it was quite possible that the value of the property was much higher in 2005, the court gave considerable weight to the debtor's opinion of the value of her own property, given the debtor's knowledge of the property's condition and purchase price. See In re Davis, 17 B.R. 547, 548 (Bankr. W.D. Mo. 1982) (noting weight given to owner of property as to its value). Given these circumstances and the evidence presented by the parties, the Bankruptcy court's finding that the value of the property was that listed by Appellee's in their bankruptcy filings was not clearly erroneous.

Appellant further contends that even using Appellee's value, § 522(f)(1) only allows for avoidance of the lien to the extent that it actually impairs the exemption, and in this case, because the Appellees only requested $1,665 in an exemption, the lien should only be avoided in that amount. However, following the clear mathematical formula of §522(f)(2)(A), the lien clearly impairs the exemption here, regardless of whether the claimed exemption is used or the higher

-17-

exemption to which Appellees are entitled. As the Bankruptcy court calculated, the sum ($67,689,.32) of the judicial lien ($18, 689.32) plus the mortgage ($47, 335) and the claimed exemption ($1,665) is greater than the debtor's interest in the property without any encumbrances ($49,000). Thus the lien impairs the exemption under the statute and should be reduced to the extent of impairment, measured by the difference between the sum of the three factors and the property value. In this case, that difference is the precise value of the lien ($18,689.32) and thus the lien should be reduced to $0, i.e. avoided in its entirety.

The basis for Appellant's argument for a reduction only to the extent of the claimed exemption is unclear. While other courts have considered the issue of whether a lien should be avoided in its entirety or only partially, to the extent that it actually impairs the exemption under the formula, see, e.g., In re Silveira, 141 F.3d 34, 35-38 (1st Cir. 1998), this court has found no authority, either statutory or judicial, and appellants have not identified any authority, for limiting avoidance to the amount of the exemption claimed. The statute itself speaks in hypothetical terms about the amount of the exemption the debtor <u>could</u> claim if there were no liens on the property, not the amount the debtor <u>did</u> claim. § 522(f)(2)(A)(iii). In this situation the lien impairs the entire exemption, whether using the claimed exemption or the entitled-to exemption, as the Bankruptcy court noted, and therefore it should be avoided entirely. Thus, the Bankruptcy court correctly concluded that the entire lien should be avoided in its entirety under the statute.

## V.    Conclusion

The Bankruptcy court appropriately exercised jurisdiction over this claim under 11 U.S.C. § 522(f)(1) and concluded that the entire lien should be avoided under 11 U.S.C. § 522(f)(2)(A). Furthermore, the court did not abuse its discretion in taking judicial notice of the value of the

property in question as listed in the bankruptcy filings on the docket. Finally, the court's findings of fact regarding prejudice from the delay in the Motion being brought were not clearly erroneous. Thus, the decision of the Bankruptcy court below is affirmed.

O:\Lauren\Unifund\sj memo.wpd